UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK
_____

In re:

    Anvil Holdings LP,                                Bankruptcy Case No. 18-21092-PRW
                                                                      Chapter 11

                    Debtor.

_____

**DECISION AND ORDER
GRANTING MOTION TO DISMISS,
BARRING DEBTOR FROM FILING A CHAPTER 11 CASE FOR 240 DAYS,
AND REQUESTING UNITED STATES TRUSTEE CONSIDER MAKING A
REFERRAL UNDER TITLE 18 UNITED STATES CODE**

PAUL R. WARREN, U.S.B.J.

      Some Chapter 11 cases are not filed for the noble purpose of enabling a struggling business to be restructured—saving the business and the jobs it provides. Instead, some Chapter 11 cases are filed for the sole purpose of frustrating the legitimate attempts of secured creditors and taxing authorities to enforce their legal rights. There is no business to be saved, no jobs at risk, no laudable social purpose to be served, no legitimate bankruptcy purpose to be advanced. The automatic stay of the Code is wielded by the debtor as a battle axe, not a shield. Precisely such a case, this.

      The United States Trustee has moved to convert or dismiss this case because, in the three months that this case has been pending, Anvil has failed to perform *any* of the duties imposed on a Chapter 11 debtor in possession under 11 U.S.C. § 1106(a), § 704(a), and Rule 2015 FRBP. (ECF No. 22). Anvil has also failed to file any of the documents required by 11 U.S.C.

§ 1116(1), as well as documents required by the UST guidelines.[1] Anvil has failed to retain counsel—more to the point, counsel has not properly sought to be appointed. (ECF Nos. 14, 15). The schedules filed are incomplete and, where information is provided, the information is gibberish. Anvil has never filed a post-petition monthly operating report. The litany of failings by Anvil and its counsel goes on and on—unlike this case, which will not go on and on.

The UST has more than amply demonstrated cause to convert or dismiss this case under 11 U.S.C. § 1112(b)(4)(F), (b)(4)(H), and § 1112(e). The exceptions under § 1112(b)(1) and (b)(2) do not apply in this case. In the exercise of its discretion, the Court finds that dismissal of this Chapter 11 case is in the best interests of creditors and the estate. The motion of the UST is **GRANTED** under 11 U.S.C. § 1112(b)(1), (b)(4)(F), (b)(4)(H), and § 1112(e). The case is **DISMISSED** under 11 U.S.C. § 1112(b)(1). Anvil is **BARRED** from filing a Chapter 11 case for 240 days from the date this case is closed, under 11 U.S.C. § 105(a), to afford creditors the ability to foreclose their tax liens without interference. The 240-day bar to Anvil filing a Chapter 11 petition extends to any person or entity to whom Anvil transfers any of the real properties at issue in this case, to ensure that Anvil cannot end-run this decision. (*See Baltic Property Solutions, Inc.*, Case No. 16-12276-MJK, where Anvil's counsel attempted precisely such an end-run in his own case.). The Clerk of Court is directed to close this case immediately.

## I.

---

[1] Anvil's petition failed to include all of the schedules and statements required under 11 U.S.C. § 521(a). Under Rule 1007(c) FRBP, the missing schedules and statements were required to be filed within 14 days of the petition. That date was November 7, 2018. On January 14, 2019, Anvil filed some (but not all) of the missing statements and schedules—82 days after the case was filed and 26 days after filing of the UST's motion to dismiss. (ECF No. 29). No parties-in-interest were served with the amended schedules. (ECF No. 31).

## JURISDICTION

The Court has jurisdiction under 28 U.S.C. §§ 157(a), 157(b)(1), and 1334(b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O). This decision constitutes the Court's findings of fact and conclusions of law to the extent required by Rule 7052 FRBP.

## II.

## FACTS

Anvil is a limited partnership formed under the law of Idaho in November 2007. Andrew G. Villone is Anvil's general partner. Anvil's business is headquartered at 37 Birch Crescent, Rochester, New York. (ECF No. 1, at 1). At some point, Frank Villone became a limited partner of Anvil. (*Id.* at 28). On October 24, 2018, Anvil filed a Chapter 11 petition, through Louis V. Asandrov, Esq. as its counsel.

A slight detour may provide a useful lens through which to view Anvil's resort to Chapter 11. Mr. Asandrov is no stranger to being a debtor in bankruptcy and to using bankruptcy as a litigation strategy to delay the consequences of not paying real estate taxes. Beginning in 2008, Mr. Asandrov has filed a total of 10 Chapter 13 cases in which he was the debtor. Each of those cases was filed to stop a tax foreclosure proceeding against his property at 109 Colvin Street, Rochester. Each of those cases was dismissed shortly after it was filed. (*See* Case Nos. 08-20830-JCN; 09-20259-JCN; 09-20680-JCN; 09-22467-JCN; 09-23284-JCN; 10-22641-JCN; 12-13241-MJK; 13-12833-MJK; 15-21195-PRW). After those efforts to dodge the tax collector failed, Mr. Asandrov transferred the real property to Baltic Property Solutions, Inc., a shell corporation controlled by him, and then he filed a Chapter 11 on behalf of that corporation. (*See* Case No. 16-12276-MJK). That case was also quickly dismissed. After having successfully held off the Monroe County tax collector for nearly a decade, Mr. Asandrov

3

lost title to 109 Colvin Street through a tax foreclosure concluded on October 31, 2017. (*See* Monroe County Clerk, Book 11941 of Deeds, Page 168). Mr. Asandrov's personal use of the bankruptcy process as a tool to frustrate the collection of property taxes seems to be a litigation strategy that he is sharing with Anvil and its principal in this case.

Here, Anvil lists a total of 12 pieces of real estate that it owns around Rochester (ECF No. 1, at 10-11):

| Location | Property Tax Status |
| --- | --- |
| 34 Bedford Street | Delinquent 2015-2018 |
| 546 Bernard Street | Delinquent 2012-2018 |
| 76 Carter Street | Delinquent 2009-2018 |
| 92 Carter Street | Delinquent 2012-2013 |
| 96 Carter Street | Delinquent 2012-2013 |
| 287 Curlew Street | Delinquent 2018 |
| 472 Jay Street | Current |
| 6 Lochner Place | Delinquent 2018 |
| 29 Lorenzo Street | Delinquent 2012-2018 |
| 195 Orange Street | Delinquent 2012-2013, 2018 |
| 201 Orange Street | Delinquent 2017-2018 |
| 13 Wood Street | Delinquent 2012-2018 |

4

Case 2-18-21092-PRW, Doc 35, Filed 01/24/19, Entered 01/24/19 16:06:47, Description: Main Document , Page 4 of 12

Despite the fact that the petition lists 37 Birch Crescent as Anvil's principal place of business, that piece of property is noticeably absent from the properties listed in Schedule A/B, Part 9 of the petition. Here's the reason. In late June 2018, just a few months prior to Anvil filing its Chapter 11 petition, ownership of 37 Birch Crescent was transferred from Anvil Holdings LP to its general partner, Andrew G. Villone. (*See* Monroe County Clerk, Book 12044 of Deeds, Page 36). The deed transferring title from Anvil to Mr. Villone was signed by Mr. Villone—beyond a shade of a doubt, he knew of and participated in the transfer. Then, in August 2018, Mr. Villone borrowed $75,000 from Quicken Loans Inc., in exchange for which Mr. Villone granted the lender a mortgage and assignment of rents covering 37 Birch Crescent. (*See* Monroe County Clerk, Book 27733 of Mortgages, Page 563). And, on December 21, 2018, *two months after Anvil's Chapter 11 petition was filed*, Mr. Villone granted Canandaigua National Bank and Trust a credit line mortgage on 37 Birch Crescent to secure a loan of $51,600. (*See* Monroe County Clerk, Book 27873 of Mortgages, Page 521).

So, it would appear that Mr. Villone caused Anvil to transfer to him its most valuable piece of property, and he then borrowed against the property's equity. But Mr. Villone neglected to mention that eve-of-bankruptcy transfer in the statements he made under oath on Anvil's behalf. (*See* ECF No. 1, SOFA Part 2, No. 4 and Part 6, No. 13). Instead, Anvil—speaking through Mr. Villone—affirmatively represented that no "[p]ayments or transfers of property [were] made within 1 year before filing this case that benefited any insider." (ECF No. 1, SOFA Part 2, No. 4). An "insider" is defined to include the general partner of a partnership. (*Id.*). Mr. Villone further represented that there were no "transfers of money or other property by sale, trade, or any other means made by the debtor or a person acting on behalf of the debtor within two years before the filing of this case to another person." (*Id.*, SOFA Part 6, No. 13). The real

5

estate records maintained by the Monroe County Clerk suggest those representations by Mr. Villone to be false.

On January 14, 2018, Anvil filed an amended petition—presumably in response to the UST's motion. (ECF No. 29). The amended petition provides some information about furniture, equipment, and accounts. (*Id.* at Sch. A/B; SOFA Parts 2, 3, 7). And, the amended petition provides some information about the leasing activities of Anvil, but in an exceedingly careless manner. (*Id.* at Sch. A/B; Sch. G). A casual comparison of the leases Anvil listed in Schedule A/B, Part 2, Paragraph 8 with the leases Anvil listed in Schedule G shows that there are 6 more leases listed in Schedule A/B than in Schedule G. How is that possible?

And, while Anvil has now disclosed gross income of $71,875 for 2017 (ECF No. 1, at 22), Anvil has still failed to provide its balance sheet, statement of operations, cash-flow statement and Federal tax return, despite the statutory mandate requiring the filing of that documentation with the petition. (*See* 11 U.S.C. § 1116(1) and § 521(a)). Anvil still has not bothered to file any monthly operating reports, proof of the establishment of a debtor in possession account, and has not had the retention of counsel approved. And, despite amending its petition, Anvil still has not disclosed the potentially fraudulent transfer of 37 Birch Crescent that Mr. Villone caused to occur or the subsequent loans taken by Mr. Villone against the equity in the property. Viewed most kindly, Anvil has done next to nothing in performing the duties imposed on a Chapter 11 debtor in possession—including its duty of loyalty, which encompasses an obligation to refrain from self-dealing and to avoid conflicts of interest. *See* 7 Collier on Bankruptcy ¶ 1108.09 (16th ed. rev.).

Even with the amended petition, there is no way for the Court, the UST, or creditors to make sense of Anvil's business operations because Anvil has not filed its balance sheet,

6

statement of operations, cash flow statement, federal tax returns, and its operating reports for each of the months it has enjoyed bankruptcy protection. The docket makes the plethora of failings by Anvil as a debtor in possession incontrovertible. And the undisclosed eve-of-bankruptcy transfer of 37 Birch Crescent from Anvil to Mr. Villone raises serious concerns about whether Anvil—acting through Mr. Villone—is acting in bad faith, and whether the schedules and statements, sworn to by Mr. Villone on behalf of Anvil, are truthful and accurate, as required by Title 18 of the United States Code.

Despite having over a month to respond to the UST's motion, Anvil did not file any opposing papers. A disheveled Mr. Asandrov appeared on the return date of the UST's motion, seeking an adjournment to allow time for Anvil to file a response to the motion to convert or dismiss. Mr. Asandrov made puzzling references to Mr. Villone's "advanced age" (71 years old) and "serious cognitive issues" as the basis for his request for additional time. Counsel provided little else in the way of an explanation for the inconsistencies and misrepresentations found in Anvil's petition. Instead of filing a response, Anvil slapped together an amended petition, leaving largely unaddressed the faults detailed in the UST's motion—and doubling-down on swearing that no transfers of property to an insider had been made within the previous year.[2] But, Anvil's duck, dodge, and hide approach is not surprising in the least. Anvil got what it wanted. Anvil paid a modest filing fee, in exchange for which it got the benefit of the automatic

---

[2] When pressed by the Court, Mr. Asandrov agreed that Mr. Villone's affirmative representation that no transfers of property to insiders had been made within one year of filing was not truthful. Mr. Asandrov also claimed that his staff carefully reviewed the real estate records maintained by the Monroe County Clerk before filing the Chapter 11 petition. Mr. Asandrov asked the Court to believe that somehow the (glaringly obvious) eve-of-bankruptcy transfer of 37 Birch Crescent was overlooked. The Court declines that invitation. Either Mr. Asandrov did no due diligence in verifying the facts contained in the petition (or the amended petition), as required by Rule 9011 FRBP, or he knew of the transfer and said nothing.

7

stay, stopping the tax foreclosure action in its tracks. If, however, Mr. Villone's affirmative nondisclosure of the transfer of 37 Birch Crescent proves to be of interest to those vested with authority to prosecute potential violations of Title 18 U.S.C., maybe Mr. Villone will get a bit more than he bargained for.

## III.

## DISCUSSION

A. **Cause Has Been Demonstrated Under 11 U.S.C. § 1112(b)**

Dismissal or conversion of a Chapter 11 case *must* be granted under 11 U.S.C. § 1112(b), if the moving party demonstrates cause, unless the Court finds that either of the exceptions created under § 1112(b)(1) or (b)(2) apply. *In re Rondaxe Props., LLC*, No. 15-20222, 2015 Bankr. LEXIS 2140, at *4-5 (Bankr. W.D.N.Y. June 30, 2015); *In re Seneca BioEnergy, LLC*, No. 14-21470, 2015 Bankr. LEXIS 1685, at *6 (Bankr. W.D.N.Y. May 19, 2015); *In re Spencerport Dev., LLC*, No. 14-21154 (PRW), 2014 Bankr. LEXIS 4909, at *3-4 (Bankr. W.D.N.Y. Dec. 4, 2014). Here, no party in interest has requested the appointment of a Chapter 11 trustee or examiner, and no "unusual circumstances" have been identified that would make conversion or dismissal contrary to the best interests of creditors. 11 U.S.C. § 1112(b)(2)(A) and (B). The court finds that the exceptions under § 1112(b)(1) and (b)(2) do not apply under the facts in this case.

The moving party bears the initial burden to establish, by a preponderance of the evidence, the existence of cause to convert or dismiss a Chapter 11 case. *Rondaxe*, 2015 Bankr. LEXIS 2140, at *5; *Seneca*, 2015 Bankr. LEXIS 1685, at *7; *Spencerport*, 2014 Bankr. LEXIS 4909, at *4; 7 Collier on Bankruptcy ¶ 1112.04[4] (16th ed. rev.). If the moving party establishes cause—and the Court finds (as it has) that the exceptions under § 1112(b)(1) and

8

Case 2-18-21092-PRW, Doc 35, Filed 01/24/19, Entered 01/24/19 16:06:47, Description: Main Document, Page 8 of 12

(b)(2) do not apply—the statute commands that the Court *must* convert or dismiss the Chapter 11 case. 11 U.S.C. § 1112(b)(1). Here, the UST has demonstrated that cause to convert or dismiss exists by offering uncontroverted proof of the following facts: Anvil failed to file—with the petition—its balance sheet, statement of operations, cash-flow statement and federal tax return, as mandated by 11 U.S.C. § 1116(1). (ECF No. 22-1, at 6). Anvil failed to file its Schedule I, as required by 11 U.S.C. § 521(a)(1)(B)(ii). (*Id.* at 5). Anvil failed to file any monthly operating reports since this case was filed. (*Id.* at 6). Anvil failed to provide evidence of the existence of a debtor in possession account. (*Id.* at 7). Anvil failed to disclose (perhaps it concealed) the eve-of-bankruptcy transfer of 37 Birch Crescent to Mr. Villone, its general partner, evidencing (at a minimum) bad faith on the part of Anvil and Mr. Villone. Cause to convert or dismiss has been demonstrated under 11 U.S.C. § 1112(b)(4)(C), (b)(4)(F), (b)(4)(H), and § 1112(e). Additionally, Anvil's failure to file—with the petition—those documents required by 11 U.S.C. § 1116(1) serves as an independent basis for the Court to find cause to convert or dismiss under § 1112(b)(2).

### B. Dismissal Serves the Best Interests of Creditors

The decision of whether to convert or dismiss this Chapter 11 case turns on which remedy will serve the best interests of creditors and the estate. Here, dismissal best serves those interests.

Anvil's estate consists of around 12 parcels of real property located in the City of Rochester. Most of the properties are burdened by liens for unpaid real estate taxes—many tax liens going back to 2012. Anvil paints a distorted picture of the value of the properties by listing only a single (modest) secured creditor in Schedule D. (ECF No. 29, at 16). But a casual glance at Schedule E/F makes it obvious that most of the creditors Anvil lists as "unsecured" are, in

fact, creditors with tax liens on Anvil's real estate and public utilities with rights under 11 U.S.C. § 366(c)(2). (*See id.* at 17-19). That leaves only 3 truly "unsecured" creditors in this case, with claims aggregating $1,687—a pittance as compared to the claims of creditors holding tax liens. (*Id.*). This case is really all about Anvil's long history of failing to pay real property taxes and utility service bills. The preservation and rehabilitation of an operating business is not Anvil's goal. The real goal of Anvil is to frustrate the ability of creditors to enforce their tax liens.

The City of Rochester, County of Monroe, and the third-party holders of tax liens should be permitted to pursue their rights and remedies under New York law. Anvil's fairly modest real estate holdings can be sold, or refinanced, or allowed to be foreclosed upon outside of bankruptcy—a situation that is likely to finally get the attention of Anvil's principal. Dismissal of this case, with a 240-day bar to Anvil filing a petition under Chapter 11 (including any successor to whom Anvil may transfer any of the properties in an effort to end-run this decision), will allow the holders of tax liens adequate time to complete foreclosures and the utility providers to take action under state law. It may also force Anvil to abandon its current business model, which seems to be the ownership of income-producing real estate, without the payment of real estate taxes or utility service bills.

C. **A Referral by the UST Under Title 18 U.S.C. May Be Appropriate**

In addition to dismissing this case, the Court requests that the UST consider making a referral of this case, under Title 18 U.S.C., to obtain a determination of whether a bankruptcy crime may have occurred with respect to this case. The statements filed by Anvil—speaking through Mr. Villone—affirmatively represent that no transfers of property were made by Anvil to a general partner within 1 year before the petition was filed. The real estate records for 37 Birch Crescent, maintained by the Monroe County Clerk, show that representation to be

10

Case 2-18-21092-PRW, Doc 35, Filed 01/24/19, Entered 01/24/19 16:06:47, Description: Main Document , Page 10 of 12

demonstrably false.  Mr. Villone can't credibly feign forgetfulness.  The tracks in the snow are all far too fresh for Mr. Villone to deny their existence.[3]  The deed he signed was recorded at the end of June 2018—only 4 months before this case was filed.  The mortgage Mr. Villone granted to Quicken Loans Inc. (in exchange for $75,000) was signed only 2 months before the case was filed.  And, the credit line mortgage Mr. Villone entered into with Canandaigua National Bank and Trust (in exchange for $51,600) was signed on December 21, 2018—2 months *after* this case was filed and the same day the UST filed the motion to dismiss.  It appears, without doubt, that Mr. Villone caused Anvil to transfer to him Anvil's most valuable asset a few months before filing the Chapter 11 petition.  And then, Mr. Villone twice swore that no such transfer had occurred.  (*See* ECF No. 1, SOFA Part 2, No. 4 and Part 6, No. 13; ECF No. 29, SOFA Part 2, No. 4 and Part 6, No. 13).  Such affirmatively deceptive conduct by the general partner of a Chapter 11 debtor should not be allowed to go unchecked.

## IV.

## CONCLUSION

The Court finds, in the exercise of its discretion, that dismissal of this case is in the best interests of the creditors and the estate.  The motion of the UST is **GRANTED** under 11 U.S.C. § 1112(b)(1), (b)(4)(F), (b)(4)(H), and § 1112(e).  The case is **DISMISSED** under 11 U.S.C. § 1112(b)(1).  As a consequence of dismissal, the automatic stay is terminated by operation of law, under 11 U.S.C. § 362(c)(2)(B).  Anvil is **BARRED** from filing a Chapter 11 case for 240 days from the date this case is closed, under 11 U.S.C. § 105(a), to afford creditors the ability to

---

[3]  "An observer of men who finds himself steadily repelled by some apparently trifling thing in a stranger is right to give it great weight.  It may be the clue to the whole mystery.  A hair or two will show where a lion is hidden.  A very little key will open a very heavy door."  Charles Dickens, *Hunted Down*, Part II (1860).

foreclose their tax liens without interference. The prohibition against Anvil filing a bankruptcy petition extends to any person or entity to which Anvil transfers *any* of the real properties at issue in this case, to ensure that Anvil cannot end-run this decision. The Court would request that the UST consider whether Anvil's affirmative nondisclosure of the potentially fraudulent conveyance to its general partner should be further investigated under Title 18 United States Code. The Clerk of Court is directed to close this case immediately.

    **IT IS SO ORDERED.**

DATED: January 24, 2019                          _____/s/_____
       Rochester, New York               HON. PAUL R. WARREN
                                                       United States Bankruptcy Judge